Oct. 1830.

Dutch Church
at Freehold
v.
Smock et al.

## The DUTCH CHURCH AT FREEHOLD v. SMOCK et al.

### BILL AND CROSS-BILL.

H. Smock, by his will, gives to his wife "the sum of six hundred dollars, to be at her disposal during life." To his four daughters he gave one thousand dollars each : for the payment of debts and legacies authorized a sale of his personal property, and so much of his real estate as might be necessary : devised the residue of his real and personal estate to his two sons; and appointed his two sons and a third person executors. One of the sons conveyed his interest in the land to the other, who mortgaged it, and suffered a judgment, on which the equity of redemption was sold by the sheriff to a stranger. The personal estate proving insufficient to pay the debts, the deficiency was advanced by the executors. The widow died, without having received or disposed of her legacy. The master reported the legacy, and interest, due, to her executor; balances due on the legacies to two of the daughters, and the amount so advanced by the executors.

By this bequest the widow took an absolute and vested interest in the legacy to her, and not merely a life estate with a power of disposition during life. Her not having received or disposed of it in her life-time, or the fact that it must now be raised out of the real estate in the hands of a purchaser, does not alter the nature of her estate.

Where an estate is given to a person generally, with a power of disposition, it carries a fee. The only exception to this rule is, where the testator gives, to the first taker, an estate for life *only*, by express words, and annexes to it a power of disposal; in that case the devisee for life will not take a fee.

Where the master, not supposing it referred to him, expresses no opinion on a material point ; if either party have farther evidence, and desire it, a farther reference will be ordered.

If the executor, while owner of the land, had paid the deficiency it was liable to pay to satisfy debts and legacies; it would have been considered paid in easement of the land, and the property would have been discharged.

The master having stated the executors' accounts jointly, and it not appearing by which of them the excess of the debts, &c. over the personal estate was advanced, a farther reference ordered.

THE original bill in this cause was filed for a foreclosure and sale of certain mortgaged premises, in the county of Monmouth. The mortgages were given by Garret H. Smock and wife, and belonged to the complainants. After the execution of these mortgages, Garret H. Smock confessed a judgment in favour of John W. Holmes and Gilbert Van Mater, as trustees of Micah Clark, late Micah Polhemus. Upon this judgment an execution issued, and the mortgaged premises were sold by virtue of that execution, and purchased by the trustees for the sum of five dollars, subject

to all legal incumbrances.  It appears that the property formerly <span>Oct. 1830.</span>
belonged to Hendrick Smock, the father of the mortgagor, who
died in 1814, leaving a last will and testament.   In this last will,
he orders that his wife Sarah shall have certain chattels and also
certain privileges, therein particularly designated, and gave her
also six hundred dollars, to be at her disposal during life.   To his
daughters Elizabeth, Sarah, Jane and Ann, he gave one thousand
dollars each, to be paid when they should respectively attain the
age of twenty-eight years.   He directed his debts and legacies to
be paid by his executors, out of the first monies they received ;
authorized a sale of his personal property for their payment, and
that being insufficient, so much of his real estate at Freehold as
might be necessary.   The residue of his real and personal estate
he gave to his two sons, Garret H. Smock and Hendrick Smock.
In 1819 Henry conveyed his moiety to Garret.   At the time of
the sheriff's sale, public notice was given by the executors of
Hendrick Smock, that a part of these legacies was unpaid ; and
that there was due to the widow on her legacy, nine hundred and
twenty dollars and twenty-five cents ; and that the sum of two
hundred and seventy-five dollars and thirty-five cents was due to
Jane, and four hundred and sixty-nine dollars and twenty-three
cents to Ann, as the balance of their respective legacies ;  and also
that there was a balance due to the executors, for monies paid
out by them in satisfaction of debts and legacies over and above
the personalty.   All these were claimed to be liens on the mort-
gaged premises, being the estate in Freehold mentioned in the
will.   The complainants admit the prior lien of the legacies, and
pray a sale of the property to discharge the incumbrances in their
order.

The answer of the trustees of Micah Clark, whose rights are
the most seriously affected by these claims, questions the amount
due to the several claimants or legatees as set forth in the bill,
prays an account, and submits whether by the true construction
of the will the legacies are properly liens on the land.

The answer of the executors of Hendrick Smock admits the
facts as charged in the bill.

The trustees of Micah Clark hereupon filed their cross-bill ; in
which they allege that the legacy to Jane was paid off by Garret
H. Smock : that *Ann* had agreed to take, and had actually ta-

Dutch Church<br>at Freehold<br>v.<br>Smock et al.

ken, Aaron Smock for the balance of the legacy bequeathed to her: that the widow always lived with Garret and was supported by him, and it was agreed that such maintenance and the property taken by her from the inventory according to the directions of the will, should be in full satisfaction of the life estate and interest in the six hundred dollars given by her husband: that the widow had lately died, leaving Aaron Smock her executor: that the legatees trusted to the personal security of Garret, but finding him embarrassed, they now colluded with him to protect his property and injure honest purchasers. They pray that the premises may be held discharged from any of the liens set up against them, save the mortgages.

The defendants to this bill deny these allegations; and insist that the widow in her life-time lived only part of the time with Garret, and that she fully compensated him for any extra. services rendered: that for a number of years she voluntarily receipted him for the payment of the interest on the legacy of six hundred dollars, but always claimed right to the principal sum; and they further insist, that the balances due are charges on the land, and to be first paid and satisfied.

On the hearing of the cause, it was adjudged that the lands were charged with the legacies by the legal construction of the will; and by a decretal order of the term of July, 1829, a reference to a master was ordered, with directions, among other things, to take an account of the amounts respectively due to the said legatees, including the legacy given to Sarah Smock, the widow of the testator, now deceased; and of the personal assets of the said testator, not specifically bequeathed; and to ascertain and report whether all the debts of the testator have been paid, and what amount, if any, is coming to the executors of Hendrick Smock, deceased, or any of them, for moneys overpaid and advanced by them.

The master reported, that at the date of his report, viz. on the 12th day of January, 1830, there was due to Jane Vanderveer, late Jane Smock, one of the legatees, two hundred and forty-three dollars and eighty-three cents; and to Ann Conover, formerly Ann Smock, another legatee, four hundred and sixty-eight dollars seventy-one cents; and to the executors of Sarah Smock, ten hundred and fifty-two dollars and ninety-four cents, if the chan-

cellor shall decree that the same is to be paid out of the estate; and also that there was due to the executors four hundred and six dollars and one cent, for money overpaid and advanced by them.

*G. Wood*, for J. W. Holmes. As to the sum reported due on the legacy to Jane Vanderveer, which was charged on the land, we set up in the cross-bill, and now insist, that it was paid; and refer to the evidence of George Clark. The master has allowed the principal and interest of the legacy to the widow, when, in fact, there was nothing due. The principal was at her disposal during life; she had not an absolute estate in it, but only an estate for life. Upon her death it did not pass to any one, except under the residuary clause. It is only charged on the real estate in aid of the personal. The legacies were to be paid out of the personal estate if sufficient, if not then out of the real estate. This legacy to the widow was raised out of the land. The executor, while owner of the land, satisfied the interest, and stood ready to pay the principal if she had required it. But she not having required it, or made any disposition of it during her life, it must return to the same fund out of which it was raised: 2 *Mad.* 107; 7 *Ves. jr.* 435. The object of turning the realty into personalty, is for the particular purpose of satisfying this legacy; without this it would not have been changed: 2 *Mad.* 110. It will not now be raised out of the realty, to be paid to the executors of the widow, to be distributed to the next of kin. As to the interest of this legacy, it is paid. She was supported by G. Smock, one of the executors and residuary legatees, during her life, which satisfied the interest. The master was to take the account; he should have made all just allowances, and ought to have allowed for this: he has not done so, but submitted it to the court, which is incorrect. The master has also allowed the excess, paid by the executors beyond the personal estate, to satisfy debts and legacies; which is improper. G. Smock, the executor and devisee, has no right now to charge this on the land in the hands of a purchaser.

*Mr. Frelinghuysen*, for G. H. Smock, the executor. There is no reason why the executors should lose the excess which they have paid to satisfy debts. The account was fairly settled in the

orphan's court, and exhibits the sums paid and amount due to the executors ; and it appears by the will, that if the personal estate was exhausted the real estate was to be charged. As to the legacy to Jane Vanderveer, G. H. Smock, in the answer and cross-bill, has sworn that it was due : Geo. Clark's evidence to the contrary, is only of loose conversations with Smock : it does not amount to any thing conclusive ; and if it did, he is interested in the matter. The will gives the legacy of six hundred dollars to the widow during life, to be at her disposition. The use is declared : it amounts to a fee. She died before it was paid. The trustees of Mrs. Clark bought the property with full notice of this claim. If it be not an absolute bequest, the legacy, unexpended, will go to the residuary legatee. But that question does not come up here ; Mrs. Clark's trustees have no concern with it. It appears that G. H. Smock paid up the interest to April, 1819. It is true, the old lady since lived with him ; but there was no contract that this was to go for the interest she was entitled to receive. She was no burthen to the family, and her executor is now entitled to receive the principal of the legacy with the interest from 1819, reported due.

THE CHANCELLOR. To the report of the master, on the several matters referred to him, exceptions have been taken by the trustees of Micah Clark ; and these exceptions are now to be disposed of.

And first, as to the balance of the legacy due to *Jane Vanderveer.* It is alleged by the exceptants in their cross-bill, that this legacy had been fully paid by G. H. Smock ; and the testimony of George Clark is referred to, to prove it. George Clark is the husband of Micah Clark, the cestui que trust, whose rights are involved in this controversy ; and he has acted as the efficient agent of the trustees in the management of the whole concern. Without examining the question of his competency, I think the evidence as it stands does not establish the fact of the payment. Admitting it to be true, as the witness states, that Garret H. Smock told him he had an account against Joseph Vanderveer sufficient to meet the balance due on the legacy of his wife, and that Smock further told him there was nothing due to Vanderveer on the legacy, it is but the allegation of the party whose interest it may have

been at the time to represent the legacy as paid.  It is not assert-
ed either by the legatee or her husband.  There is no evidence
to show any acknowledgment by them, that the balance of the
legacy was satisfied.  Not only so, but they both expressly deny
it in their answer to the cross-bill.

I see no reason to disturb this part of the master's report.

2d. As to the legacy to the widow Sarah Smock, now
deceased.

The master reports the amount on the 12th January, 1830, to
be, principal six hundred dollars, and interest four hundred and
fifty-two dollars and ninety-four cents—computing interest from
the 1st of April, 1819.

Whether this is an absolute legacy, or whether the principal is
after the death of the legatee to revert to the estate ; and also whe-
ther, upon the evidence, the interest is to be considered as paid,
were matters supposed not to be submitted to the master, and on
which, consequently, he made no report.  They are now brought
before the court for adjudication.

With regard to the legacy, the words of the testator are, " I
also give to my wife the sum of six hundred dollars, to be at her
disposal during her life."  It appears that she made no disposition
of it during her life, and that it remained in the hands of the
executors.  I am of opinion, nevertheless, that the widow took
in it an absolute and vested interest, and not merely a life estate
with the power of disposition during her life.

In the case of *Robinson* v. *Dusgale*, 2 *Vernon*, 181, J. S.
devised his lands to A. for life ; remainder to B. in fee, he paying
£400, whereof £200 to be at the disposal of his wife, in and by
her last will and testament, to whom she shall see fit to give the
same.  The wife died intestate, making of course no disposition
by will.  The plaintiff took out letters of administration, and
brought his bill to have the £200.  And it was insisted for the
defendant that the property was not absolutely vested in the wife,
but that she had only a power to dispose of it by will, if she
thought fit ; and that not having done so, the defendant was not
chargeable with the payment of it.  But the court took it, that
the whole interest and property of the £200 vested in the wife,
and that she had power to dispose of it as she thought proper ;
and therefore decreed it for the administrator.  This case is ap-

20

proved, and the same principle adopted by Sir Thomas Sewell, the master of the rolls, in *Maskelyne* v. *Maskelyne, Amb.* 750. So in *Hixon* v. *Oliver*, 13 *Ves.* 108. The testator gave to his wife, Faithy Oliver, £60 a year as her dowry, to be paid to her quarterly by his executor from the day of his death ; and the sum of £300 to be disposed as she thought proper, to be paid after her death ; and also his leasehold dwelling-house and furniture during her natural life. The testator died soon after the date of the will, and his widow survived him about a month and died intestate, without having disposed of the legacy of £300. Her administrator filed a bill praying payment of the legacy. The court held the legacy to be vested and absolute, and that the administrator was entitled to recover, upon the authority of the cases already cited. Ld. Eldon thought in that case that the widow could have disposed of the legacy as she thought proper, not being confined to a disposition by will. See also *Ross* v. *Ross,* 1 *Jac. & Walk.* 154.

The same principle has been adopted in this country. In *Jackson* v. *Robins*, 16 *Johns. Rep.* 588, Chancellor Kent, in the court of errors of New-York, says, we may lay it down as an incontrovertible rule, that where an estate is given to a person generally or indefinitely, with a power of disposition, it carries a fee ; and cites the additional authorities of *Reid* v. *Shergold,* 10 *Ves.* 370 ; *Goodtitle* v. *Otway,* 2 *Wils.* 6. " The only exception to this rule is, where the testator gives to the first taker an estate for life *only*, by certain and express words, and annexes to it a power of disposal. In that particular and special case, the devisee for life will not take an estate in fee, notwithstanding the distinct and naked gift of a power of disposition of the reversion. This distinction is carefully marked and settled in the cases." The same conclusion is drawn and clearly stated in 1 *Roper on Legacies,* 430.

In the present case there was a power of disposal during life. This power extended not only to a part, but to the whole of the legacy ; and by consequence, the power was absolute. The omission to dispose of it in her life-time, does not alter the nature of the estate ; nor does the fact of its not having been paid to the widow, or that it must now be raised out of the real estate, in any degree vary the case. The purchasers had full notice of

the claim, and it was their duty to inform themselves of its nature and extent.

As to the interest on this legacy, it is admitted that the widow was entitled to it, and that now since her death her personal representatives are entitled to claim it, unless it has been paid or in some way settled between the parties. The master who was directed to take an account of the amount due the legatees, states that there is due to the executors of Sarah Smock, widow, ten hundred and fifty-two dollars and nine-four cents. This includes interest from April, 1819. But in the schedule to the report, it appears that the master supposes it is not submitted to him whether, upon the evidence, the interest is to be considered as paid; and he has, of course, expressed no opinion on that point. Although this is a proper matter for investigation before a master, I feel unwilling to direct a second reference, and thereby subject the complainants to further delay. But if the order was understood by the parties as it was by the master, it may be that they or one of them may wish to produce evidence to ascertain the facts connected with this charge. The opportunity should be given if desired ; and consequently, if either party has further evidence to offer, and wishes an opportunity to produce it, the reference will be ordered.

3d. The remaining exception is to the allowance of four hundred and six dollars and one cent to the executors, for monies paid and advanced by them over and above the proceeds of the personal estate.

By the accounts of the executors, as settled in the orphan's court upon a report of auditors, there appeared to be a balance due them in 1827 of three hundred and six dollars and seventy cents. This, together with the costs of the settlement before the auditors and the orphan's court, and the interest up to the time of the report, is put down at four hundred and six dollars and one cent. The master says there is no evidence to satisfy him that this amount has been received by the executors out of the profits of the estate in their hands, and he adds it to the amount to be paid out of the mortgaged premises.

I am not satisfied with this disposition of it ; and yet I am not prepared to say it is altogether incorrect. If the personal estate was insufficient to satisfy the legacies and debts, and the expenses

of settling the estate, the surplus was to be charged on these premises; and under ordinary circumstances there would be no difficulty in making the allowance now claimed. But in this case, Garret H. Smock, one of the executors who claims this allowance, was at the time these monies were paid out, the owner of these very lands charged with the deficiency. If he had been the sole executor, and had while owner of the property paid the deficiency which it was liable to pay, it would have been considered paid in easement of the land, and the property would have been discharged. If the lien be paid off by the owner of the land, it is as though the money had been raised by sale. The difficulty consists in the fact that there are three executors, and that the final account rendered by them is a joint and not a separate account. Hence it is impossible to say whether this money has been advanced by all the executors jointly, or only by some or one of them. On looking at the vouchers, however, it seems that a very large portion of the payments has been made by Garret; and from all that appears, it is by no means improbable that all the balance claimed, would, if allowed, be put into his pocket. This would be unjust as against the purchasers. The notice given at the sale does not affect the question. If the lien was satisfied and paid, the notice could not revive it. It may be, however, that the whole or a part of this money belongs of right to the other executors; that the assets received by them have been less than their disbursements and allowances for services: and if so, the allowance ought to be made them. These are matters which the court cannot now ascertain, nor can it be done without referring it to a master to take and state the accounts of the executors separately, taking the account settled in the orphan's court as the basis. The report should state the amount of assets received, and the amount of disbursements made, by each separately, together with the proportion of commissions proper to be allowed each one, on the principles applicable to such cases. I shall accordingly refer it to the master to take the necessary account, with leave to examine the executors upon oath touching the same; reserving all further directions until the coming in of the report.